Justice Goldberg,
concurring and dissenting.
I concur in the decision of the majority in this case, but for different reasons. I am of the opinion that, in the context of this case, summary judgment, based on the law of the case doctrine, arising from an unap-pealed order in a proceeding, pursuant to Rule 60(b) of the Superior Court Rules of Civil Procedure, is reversible error. It is my opinion that the Januaiy 2007 order became a final order when counsel neglected to file a timely notice of appeal,[1] Furthermore, and most significantly, I deem the majority’s characterization of the January 2007 order as “interlocutory in nature” to be indefinite and unclear and will lead *481 to confusion in the Superior Court when this ease is remanded. I am compelled to respectfully dissent.
At least three justices of the Superior Court and a commissioner have devoted considerable time, effort, and judicial resources in connection with what can only be described as an unseemly squabble with intractable litigants and their feuding lawyers. Because we are remanding a single count—count 7 of the Ballards’ counterclaim, filed in response to Hamilton’s (now SVF’s) fifth amended complaint—in a case that was filed seventeen years ago, to yet another justice of the Superior Court, it is my belief that the Supreme Court must clearly articulate what is being remanded to the Superior Court and, more significantly, the issues that are not before the trial court on remand. A careful examination of the voluminous record in this saga and the twists and permutations taken over this difficult terrain leads me to this conclusion.
Since the inception of this case in 2000, at least three judgments entered pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure, before the entry of final judgment—which is not before us— and three or four additional complaints have been filed in Superior Court.[2] Not a single case has gone to trial; but Rule 54(b) judgments abound and continue to multiply.
The partition order in this case was entered in 2001, but the Rule 54(b) judgment did not enter until 2002. The first skirmishes in the Battle of Swiss Village soon commenced—culminating in another order that confirmed the original metes and bounds description of the easement and its filing in the land evidence records. Another series of clashes developed, including claims of trespass, the clear-cutting of hundreds of trees by the Ballards, squabbles over the survey lines, and attorneys’ fees. Another Rule 54(b) judgment, denying Hamilton’s request for attorneys’ fees as untimely, was affirmed by this Court in Moore v. Ballard, 914 A.2d 487 (R.I. 2007). While the original complaint was pending, hostilities over the access easement, sewer lines, terrain, and gates persisted.[3]
In light of the majority’s reference to the Jarndyce-like nature of this sojourn, it is my firm belief that this Court should not, in any way, contribute to its perpetual existence. Classifying an order issued in accordance with a Rule 60(b) motion for relief from judgment as “interlocutory in nature” will lead to unnecessary confusion, obfuscation, and delay; it is the wrong path to travel and raises the question, interlocutory to what claim?
*482 It -is quite clear to me that the order, which the majority has classified as “interlocutory in nature,” was entered as a final order at the conclusion of a Rule 60(b) proceeding, which was instituted by the Ballards, in February 2005, who implored the trial justice to grant relief from the original, unappealed, Rule 54(b) partition judgment.[4] The only matter that was heard by this Superior Court justice was the Ballards’ Rule 60(b) motion for relief from judgment, in which the Ballards sought to have the easement relocated and, failing that, agreed to the construction of a farm road. The intrepid trial justice took up the motion—that specifically invoked the “general equitable powers” of the Superior Court—in order to give the Ballards relief from that judgment. The Ballards placed the question of the appropriate use of the easement, whether it should be relocated or modified “because * * * the location is impracticable” due to the “terrain and vegetation,” squarely before the Superior Court, and the Ballards obtained relief—a farm road, allowing for reasonable use, was constructed by SVF. (Emphasis added.) The bickering continued nonetheless when the Ballards declared that they wanted .to utilize the easement for an industrial sized tractor they had not yet acquired. It was represented to the Superior Court that the tractor that the Bal-lards currently owned fit through the gates. , .
The Superior Court justice patiently devoted significant energy and judicial resources in an earnest effort to accommodate the parties and to reach a truce in the neighborhood. He conducted at least six hearings-in the Superior Court, including an evidentiary hearing in August 2006, which was followed by SVF’s motion to vacate the easement based on unclean hands on the part of the Ballards.[5]
The trial justice conducted two views of the easement; the first was an inspection of the terrain and the location, as set forth in the recorded survey. On April 22, 2005, after the first yiew, the Superior Court justice declined to relocate the easement, concluding that it was laid out in what was determined to “be a suitable place” as the prior trial justice and commissioner balanced considerations of safety, the environment, and the concern for the animals that inhabit the property. He also saw no hazards for anyone who would be driving a farm vehicle, “such as a pickup truck or a tractor over the course that has been outlined.” He continued the case for another hearing. The Ballards never raised an objection. However, on or about May 31, 2005, in the midst of the hearings on the Rule 60(b) motion, the Ballards filed count 7 of their counterclaim seeking injunctive relief so that the Ballards could undertake improvements to their easement in order “to fulfill their rights in the easement for full, unimpeded passage, both pedestrian and vehicular.” (Emphasis added.) Count 7 alleged that the Hamiltons have prevented or thwarted them from improving their easement, and they sought an injunction against further interference with the Bal-lards’ efforts to improve the easement. Meanwhile, their Rule 60(b) motion continued to be addressed by the trial justice.
*483 The case took another turn, however, on June 27, 2005, when SVF volunteered to obtain the permits and install a farm road providing reasonable access to the Bal-lards. The Ballards agreed, and on August 11, 2005, an order entered that included the following:
“1. SVF Foundation shall provide reasonable access to the defendants as soon as practicable over the access easement, described in the Waterman Class I survey commissioned by Order of this Court, by clearing existing vegetation and creating a farm-type road as described by the Court during the colloquy at [the June 27,2005] hearing.
“2. SVF Foundation shall file with the Rhode Island Department of Environmental Management and the City of Newport Critical Area Review Committee, on or before July 5, 2005, applications for permits and/or approvals, as required, for the creation of said access. SVF Foundation should, in the interest of conciliation, provide the defendants with a copy of the initial applications but is not ordered to supply the Ballards with all plans submitted for approval. “3. If, at the end of construction of said farm-type road, the Ballards feel that access is not reasonable for their farm vehicles, they may petition the Court to review the access that has been created pursuant to this order.
“4. The parties shall have a telephone conference with the Court, on July 18, 2005 to arrange for a further status conference regarding the access easement is [sic] necessary.”
Although a year passed before the trial justice saw the parties again, there was no armistice. SVF undertook permitting and construction of the access easement in accordance with the original metes and bounds description. A farm road was constructed with a ten-foot roadbed that was approved by the Rhode Island Department of Environmental Management. The Bal-lards obtained relief under Rule 60(b)— reasonable access for the purpose for which the easement was intended. At the end of the construction in spring 2006, the farm road was ten feet wide, and the gates were ten feet wide—-a width that SVF contends is “virtually identical to the gates * * * used on [the Ballards’] property,” The Ballards were not satisfied, and the focus of the next dispute was the width of the gates.
The Ballards argued that they planned to acquire a tractor with a wheelbase of approximately thirteen-and-a-half feet that would not fit through the gates. At a hearing on July 7, 2006, an issue arose as to whether the Ballards had alerted SVF that it needed wider gates to accommodate the industrial tractor that they intended to purchase. The Ballards filed a motion to compel compliance with a subpoena seeking production of the engineering records from the firm that SVF retained for the permitting. The trial justice denied the motion to compel without prejudice, declaring that it could be submitted at a later time. This motion was never resubmitted.[6] The trial justice scheduled an evidentiary hearing concerning the tractor and the gates.
A two-day evidentiary hearing was held on August 8 and 9, 2006; Ballard and his caretaker testified about equipment they were contemplating and their desire to cut back the vegetation along the new farm road, to a width of fifteen feet.[7] Hamilton *484 testified that he did not want to install fifteen-foot gates for access over a ten-foot farm road, because he feared that someone would drive a larger vehicle over the farm road and intrude upon the wetlands. At the conclusion of this hearing, the trial justice questioned the Ballards’ good faith.[8] The trial justice made a second visit to the site on August 29, 2006, and he viewed the farm road, the terrain, and the gates.
On January 17, 2007, he conducted a final hearing, and, on January 30, 2007, he issued an order denying any further relief. It is this order which the majority characterizes as “interlocutory in nature.”
What is clear from the record in this case is that the battle of the easement and the gates and the issue of reasonable access was fought long and hard in the Superior Court and culminated in the January 2007 order that the majority has classified as “interlocutory in nature.” It is not.
Significantly, on January 17, 2007, during the final hearing, the trial justice made several important findings of fact, including those related to the farm road and a demonstration utilizing a mockup of a tractor that the Ballards were contemplating purchasing. Those findings specifically were incorporated into the January 2007 order and stated that passage by a tractor with a wheelbase of more than thirteen feet was impossible. The trial justice found that the existing terrain on the easement was not conducive to that equipment:
“It was clear to me, and I so found based upon the view, that a tractor that size cannot be supported by that easement. The terrain is not flat in all places, and, indeed, on some places it is pitched in an angle of, I would say, 30 degrees, * * * it is an angle, it is not a flat surface, and rocks and shrubs and thicket and trees would make it impossible for a tractor that size to get through the easement. Certainly, it could not do so safely. Yet, at the same time I find that Mr. Ballard can mow his fields by using the current tractor that he has * * *.
[[Image here]]
“[TJherefore, the 10-foot gates through which the Ballard[s’] tractor can pass without difficulty, that does not inhibit the reasonable and fair use of the easement by the Ballards. So, on that particular point I think the record shouts out the conclusion I’ve just made and there is no need for a trial on the easement issue.
«⅜ ?{S *
“The easement shall stand along that road and with the existing gates.” (Emphases added.)
When counsel for the Ballards asked the trial justice for “an articulation of exactly what the [Cjourt is ordering so we’ll both have something to look at[,]” the Superior Court justice declared with finality: “[T]he 10-foot gates do not inhibit the Ballards’ use of that easement, and, therefore, they may remain.” (Emphases added.) SVF’s counsel inquired, “[i]t is uncontested, I gather * * * that the improved farm road that you’ve cited is a reasonable passageway, and, therefore that issue is also waived.” (Emphasis added.) The final word from the trial justice should convince everyone that the January 2007 order was not “interlocutory in nature”:
“Yes. I didn’t realize that anybody suggested otherwise. I know the Bal-lards would have preferred another course, but the existing one is—puts [SVF] in compliance with its obligations relative to earlier Court [ojrders and the maintenance of that road as the easement.” (Emphasis added.)
*485 The Ballards did not object. The January 2007 order incorporated these findings. The order recites that the matter came before the Superior Court four times after the farm road was constructed, “on July 7, August 8 and 9, 2006 and January 17, 2007[,]” and “after considering testimony, viewing the property and reviewing the memoranda of law,” the Superior Court ordered:
“1. SVF Foundation has constructed a farm road providing reasonable access to the defendants within the access easement described in Waterman Class I Survey commissioned by the Court on January 16, 2004 dated and April 28, 2004 and thereby satisfied this Court’s previous orders.
“2. Based on the evidence presented at the hearing, and the Court’s views of the subject property, the Court finds that the 10 foot gates do not impinge on the Ballards’ reasonable use of the access easement and the Court incorporates by reference its comments from the bench on January 17, 2007.
“3. SVF Foundation’s motion to eliminate the easement is denied.[9]
“4. The file shall be transferred back to Newport County for trial on only those remaining issues and counts which are unrelated to matters already raised before this Court regarding the access easement.” (Emphases added.)
In my opinion, for this Court to characterize the January 2007 order as “interlocutory in nature” is incorrect and will lead to needless and confusing litigation in Superior Court. This Court should provide illumination and clarification with respect to just what aspect of this case such an interlocutory order attaches to. Because the Rule 60(b) motion for relief from judgment filed by the Ballards was the only matter that was before this justice for two years and sought relief from the original and only Rule 54(b) judgment, it was not an interlocutory order. It was a final order that closed the door on the access easement, along the parameters set forth in the recorded partition survey. The Bal-lards obtained relief—-the farm road was built. The Ballards were not satisfied, but they did not appeal. A petition for writ of certiorari generally is not available to salvage an untimely appeal.
Furthermore, count 7 of the counterclaim was filed after the Rule 60(b) hearings commenced, before SVF was ordered to construct the access easement, and before the ten-foot iron gates were constructed. Count 7 makes no mention of the gates whatsoever. Count 7 sets forth a claim for injunctive relief and consists of four paragraphs, two of which clearly are moot.[10] Count 7 reads as follows:
“COUNT VII (Unreasonable Interference with Easement)
“59. The allegations in paragraphs 1 through 58 are incorporated herein as if stated in their entirety.
“60. The Ballards’ improvement of the Access Easement is necessary to fulfill *486 their rights in the easement for full, unimpeded passage, both pedestrian and vehicular, between their Lot 404 and Lot 20.
“61. Hamilton’s actions to prevent or thwart the Ballards from improving their Access Easement, including her objection to the processing of Ballards’ applications with DEM and CARC, constitutes a material impairment and/or unreasonable interference with the Bal-lards’ right to use their access easement for its intended purpose.
“62. Hamilton should be enjoined from further interference with the Ballards’ improvement and use of their access easement.”
Significantly, during the January 17, 2007, hearing, counsel for the Ballards, in open court, notified the trial justice that it was his intention
“to move to amend their counterclaim to include a count concerning the impingement on the easement and have this case brought to a conclusion in the Superior Court in Newport through trial on the multiple counts * * * including the question of whether the gates constitute an unlawful impingement on an easement.”
This never happened. This representation amounts to a judicial admission and acknowledgment that no such claim was pending in Superior Court. This case languished in Newport Superior Court for another seven years. This circumstance points to the compelling need for this Court to speak with a clear voice to ensure that, on remand, count 7 of the counterclaim is not transmuted into a count that was never filed—“a count concerning the impingement on the easement” or evade the consequences of our final judgment rule. During the seven-plus years between the January 2007 order and the summary judgment in this case, no effort was made to amend count 7 to address the width of the gates; nor were any other counts added to the counterclaim.[11]
The trial justice declared that “the record shouts out the conclusion I’ve just made and there is no need for a trial on the easement issue.” The trial justice, who was about to embark upon a well-earned retirement, ordered the return of the file to Newport County, “for trial on only those remaining issues and counts which are unrelated to matters already raised before this Court regarding the access easement.” (Emphasis added.) No appeal was taken.
To be sure, this Court denied the Bal-lards’ petition for writ of certiorari, filed several months after the Rule 60(b) order entered. In typical fashion in opposing cer-tiorari, SVF argued, inter alia, that the order was interlocutory; the Ballards responded that count 7 did not relate to the tractor gates.[12] This Court denied certiora-ri. Parties to actions in our courts and our trial justices ought to be able to rely on the finality of court orders. The burden of unnecessarily relitigating this issue should not be shouldered by the next Superior Court justice to whom this case is assigned. I respectfully submit that the January 2007 order was final, the issue of the access easement was laid to rest, and *487 count 7 is wholly irrelevant to the issues decided during the Rule 60(b) proceeding.
However, my opinion regarding the finality of the January 2007 order does not lead me to conclude that the summary judgment granted by the trial justice in this case should be affirmed, I reach this conclusion because I agree with the majority that, in the context of this case, summary judgment, based on the January 2007 order, was not appropriate, respectfully.
Clearly, count 7 may be moot, at least in part, because it was filed before the Rule 60(b) hearings concluded, the farm road was built, and the gates were installed. Additionally, in granting summary judgment, the hearing justice, although homing in on the fact that, during the seven-year interregnum between the 2007 order and the hearing before him, nothing had changed on Edgehill, he nonetheless failed to set forth any reasons for granting summary judgment. I agree with the majority, however, that the law of the case doctrine is quite viable on remand, and the issue of mootness also is in play. What is abundantly clear is that the issue of the location of the easement and the width of the gates, in my opinion, cannot be relitigated. Consequently, I respectfully concur in and dissent from the opinion of the majority.

. As will be discussed herein, the fact that the Ballards sought review by petition for writ of certiorari is irrelevant; because the order was appealable, certiorari did not lie.

. The remaining claims and counterclaims in this fifth amended partition action—minus the bevy of judgments pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure—and two additional cases, filed after the partition action, were terminated on July 27, 2015—on the eve of trial—and some claims are pending in this Court in a consolidated appeal. SVF also has notified the Court that the Ballards have filed yet another case, Ballard v. SVF Foundation, NC-2013-499, complaining about the gates and the easement that is the subject of this case. There also is lurking in the background the ominous question of whether the easement that is the subject of this controversy was assigned to eternity when the Ballards, as owners of the Manor House property, transferred their interest to a family member.
Thus, the classification of the January 2007 order as "interlocutory in nature” will give rise to another mountain of controversy, which will ultimately wind its way back to this Court, but not before a fourth or fifth member of the trial bench enters the fray.

. In its brief in this Court, SVF has contended that "[i]n the summer of 2004, the Ballards trespassed onto [SVF's] property * * * and clear cut a large swath of forested area.” This resulted in an injunction.

. In their twenty-four-page memorandum in support of their motion for relief from judgment, the Ballards state: ".This Court clearly has the authority under Rule 60(b) [of the Superior Court Rules of Civil Procedure], as well as. under its general equitable powers, to order this relief.” The Court did so when it ordered SVF to construct the roadway on the easement and again on January 30, 2007, when it denied any further relief and concluded the proceeding under Rule 60(b),

. This ruling summarily denying this motion is set forth in the January 30, 2007, order.

. In January 2007, counsel for the Ballards argued that the motion to compel production was pending before the trial justice. It was not.

. Apparently this was impossible in various places because of wetlands, large trees, ledge, and a historic wall.

. This appears to have been the impetus for the motion to vacate the easement based on unclean hands.

. It does not appear that there was any argument or ruling concerning SVF’s motion to eliminate the easement during the January 17, 2007, hearing, save for the representation by counsel for the Ballards that the only motions that were before the Court were counsel’s motion to enforce the subpoena—that was not pending—and SVF's motion to eliminate the easement based upon unclean hands by the Ballards. I therefore disagree with the majority’s conclusion that the January 17, 2007, hearing "appears to have been held in response to SVF’s motion to eliminate the easement.” There is no record support for this assumption.

. Because SVF constructed the access easement and obtained the necessary permits, after this counterclaim was filed, these allegations are moot.

. SVF states in its brief that the Ballards have filed yet another action in Superior Court, Ballard v. SVF Foundation, NC-2013-499 that includes yet another complaint about the ten-foot gates and the access easement. The case is part of a consolidated appeal that is currently pending in the Supreme Court, Therefore, that case has remained pending for a total of four years.

. In his reply memorandum in the petition for certiorari, counsel declared that count 7 "addresses SVF's interference with the Ballard's [sic] efforts to improve the easement rather than its later imposition of constructing gates on the easement roadway." (Emphasis added.)